BRYSON, Circuit Judge,
concurring in part and dissenting in part.
I concur in the portion of the court’s opinion sustaining the district court’s ruling that the “kit” claims of AstraZeneca’s '603 and '099 patents are invalid. Because I believe Apotex has raised a substantial question of invalidity as to the other claims of the '603 patent, see Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1359 (Fed.Cir.2001), I would reverse the district court’s grant of a preliminary injunction.
Apotex has asserted that two prior art references anticipate the claims in dispute, the '528 patent and the Thorax advertisement.
1. The district court’s ruling that the '528 patent does not anticipate the '603 claims was predicated on an unduly narrow claim construction of the term “budesonide composition” in the '603 claims. The court’s construction required the budesonide to be “dispersed in a solvent in the form of a solution or a suspension,” and it excluded “the involvement of liposomes as described in the '528 [reference.]” The claims of the '603 patent, however, are broader than that.
Claim 1, the only independent method claim of the '603 patent, recites the administration of a “nebulized dose of a budesonide composition in a continuing regimen at a frequency of not more than once per day.” Even assuming that the reference to a “nebulized” dose requires dispersion in a solvent, nothing in the patent mandates a particular manner in which the budesonide and the solvent are to be combined.
More specifically, contrary to the testimony of AstraZeneca’s expert Dr. Williams, the '603 patent does not require that the budesonide of the “budesonide composition” be directly suspended or dis *1066 solved in a solvent, free from encapsulation or entrapment within liposomes. In fact, the language of the patent undercuts Dr. Williams’s rationale for that interpretation. While Dr. Williams assumed that use of the “depot effect,” with which liposome involvement may interfere, is a critical aspect of the invention of the '603 patent, the specification explicitly disavows any need for the depot effect to occur. Thus, after describing the depot effect, the specification states: “This proposed mechanism of action is exemplary; the invention is not limited by any particular mechanism of action.” '603 patent, col. 3, ll. 12-13. That language indicates that the patentees did not consider the depot effect to be essential to the effectiveness of once-daily- or-less dosing, as Dr. Williams claimed. Because the patented method of treatment encompasses mechanisms of action other than the depot effect, the term “budesonide composition” need not consist of budesonide directly dispersed in solvent, and it need not exclude the involvement of liposomes as described in the '528 reference. The '528 reference therefore appears to anticipate (or render obvious) the asserted claims under the proper construction of the term “budesonide composition.”
2. With respect to the 1994 advertisement for Pulmicort Respules® in the journal Thorax, AstraZeneca concedes that the advertisement discloses every limitation of the asserted method claims except for the frequency of drug administration: “not more than once per day.” On that issue, the district court stated:
[although the Thorax advertisement states that “[t]he maintenance dose should be the lowest dose which keeps the patient symptom-free[,]” Dr. Chipps testified that this statement does not instruct once-daily dosing because the ad was published “back in 1994 ... before we had any information or historical perspective that once a day therapy worked for anybody.” The Court finds this answer persuasive.
AstraZeneca LP v. Apotex, Inc., 623 F.Supp.2d 579, 596 (D.N.J.2009). The district court concluded that at the time of its publication the Thorax advertisement did not enable once-daily dosing, because a person of skill in the art in 1994 would not have believed that once-daily administration of Pulmicort Respules® would be effective. As the majority acknowledges, however, a prior art reference need not demonstrate utility in order to serve as an anticipating reference under section 102. Rasmusson v. SmithKline Beecham Corp., 413 F.3d 1318, 1326 (Fed.Cir.2005).
The Thorax advertisement contains a list of recommended dosing regimens as low as “0.25-0.5 mg twice daily”; it also suggests that “the maintenance dosage should be the lowest dosage which keeps the patient symptom-free.” The Apotex label similarly recommends dosages of 0.25 mg to 0.5 mg administered twice daily and states that “[o]nce the desired clinical effect is achieved, consideration should be given to tapering to the lowest effective dose.” The district court concluded that Apotex’s label induced infringement by suggesting the administration of the drug once a day. There is no reason to treat the similar recitation in the Thorax advertisement differently. The district court’s rationale for distinguishing between the Apotex label and the Thorax advertisement — that in 1994 the scientific community had yet to confirm that once-daily dosing was effective in large patient populations — does not undermine the effect of the advertisement in suggesting a reduction in dosage for particular patients, which would necessarily be achieved either by reducing the amount administered on each occasion or the frequency of administration.
*1067 Because Apotex has presented a substantial question concerning the validity of the '603 patent’s method claims, I would vacate the preliminary injunction.