Opinion for the court filed by Circuit Judge RADER. Dissenting opinion filed by Circuit Judge NEWMAN.
RADER, Circuit Judge.
Defendant-Appellant Doc’s Marketing Corp. (“Doc’s”) appeals the decision of the United States District Court for the Northern District of Ohio granting a preliminary injunction in favor of Plaintiff-Appellee Erico Int’l Corp. (“Erico”). Erico Int’l Corp. v. Doc’s Mktg., Inc., 1:05-ev-2924, 2006 WL 1174259 (N.D.Ohio May 3, 2006) (“Initial Order”); Erico Int’l Corp. *1352 v. Doc’s Mktg., Inc., 1:05-cv-2924, 2007 WL 108450 (N.D.Ohio Jan. 9, 2007) (“Reconsideration Order ”). Because this court finds that Doc’s has raised a substantial question as to the validity of the patent at issue, this court vacates the preliminary injunction.
I
Erico develops and manufactures a variety of fasteners used in the installation of electrical and communications cables for commercial buildings and other facilities. In particular, Erico sells a popular J-Hook fastener. The J-Hook, offered in different strengths and sizes, is a metal device that supports lengths of cable. Erico, through the inventor Raymond Scott Laughlin, obtained U.S. Patent No. 5,740,994 (“the '994 patent”) on its J-Hook and the method for its use. The '994 patent issued on April, 21 1998 from an application filed on December 26, 1996. Figure 6 of the '994 patent illustrates the J-Hook:
[[Image here]]
Erico does not assert infringement of the apparatus claim to the J-Hook, but asserts claim 17, the method of using the J-Hook. Claim 17 reads:
A method of supporting a run of a bundle of low voltage communication cable, comprising the steps of providing spaced supports, each comprised of a curved saddle having smooth down-turned obtuse angle lateral edges, suspending the run from saddle to saddle, and spacing the saddles along the run so that the run sags between saddles no more than about 80 cm below the saddles.
'994 Patent col.9 11.61-67 (emphasis added). Figure 18 from the '994 patent illustrates the method:
*1353 [[Image here]]
In January 2000, the United States Patent and Trademark Office (“PTO”) reexamined the '994 patent in Reexamination No. 90/005,606. Based on the reexamination, the PTO cancelled numerous apparatus claims on the J-Hook. Specifically, the PTO found the apparatus claims obvious under 35 U.S.C. § 103 in light of three references—Akashi et al. (JP '290), 3-89290, Sep. 11, 1991, (Japanese Kokai Patent); Erico, “For Communications & Low Voltage Applications,” pp. 3-26 (1994); and OBO Bettermann Publication, p. 243, and “Cable Support Clips,” p. 18. Ex parte Raimond Scott Laughlin, Appeal No.2002-0244 (heard on May 14, 2002). The Board of Patent Appeals and Interferences (“Board”) affirmed the cancellations. Claim 17 survived the reexamination process.
Doc’s manufactures a variety of hardware items and specifically manufactures and sells J-Hooks. Doc’s concedes that its J-Hook copies Erico’s J-Hook. In 2005, Erico discovered that Doc’s was selling a copy of its J-Hook and informed Doc’s. At first, Doc’s assured Erico that it would not sell its existing J-Hook inventory. Doc’s also assured Erico that it would refrain from future copying and selling of J-Hooks. “Thereafter, however, [Doc’s] sold the very products it promised to retain and continued to manufacture and sell knock off J-Hooks.” Initial Order, slip op. at *5. Erico filed suit to enjoin Doc’s alleged infringement of Claim 17 of the '994 patent. Doc’s then challenged Claim 17’s validity. Id.
II
This court reviews a district court’s decision granting a motion for preliminary injunction under an abuse of discretion standard. Novo Nordisk of N. Am., Inc. v. Genentech, Inc., 77 F.3d 1364, 1367 (Fed.Cir.1996). “An abuse of discretion may be established by showing that the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings.” Id.
“A decision to grant or deny a preliminary injunction is based on the district court’s consideration of four factors: ‘(1) the likelihood of the patentee’s success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance *1354 of hardships between the parties; and (4) the public interest.’ ” PHG Techs., LLC v. St. John Cos., Inc., 469 F.3d 1361, 1365 (Fed.Cir.2006) (citing Oakley, Inc. v. Sunglass Hut Int’l, 316 F.3d 1331, 1338-39 (Fed.Cir.2003)). To show a likelihood of success on the merits, Erico must show a likelihood that Doc’s infringes a valid claim of the '994 patent. See Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed.Cir.2001). From the other vantage point, Doc’s must show a substantial question of invalidity to avoid a showing of likelihood of success. See PHG Techs., LLC, 469 F.3d at 1365.
On May 3, 2006, the district court granted Erico’s motion for a preliminary injunction. Initial Order. Doc’s filed a motion for reconsideration. The district court denied Doc’s reconsideration motion. Reconsideration Order. The district court applied the correct four factor test with emphasis on the “likelihood of success” by citing to Oakley Inc., 316 F.3d 1331 in its Initial Order and to eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006) in its Reconsideration Order.
In analyzing Erico’s likelihood of success on the merits, the district court considered Doc’s three invalidity defenses — (1) inequitable conduct by Erico in obtaining the patent, (2) on-sale bar under 35 U.S.C. § 102(b), and (3) obviousness under 35 U.S.C. § 103. First, Doc’s “argues that the '994 Patent is invalid (or otherwise unenforceable) due to inequitable conduct stemming from Plaintiffs failure to disclose material information to the PTO during the patent’s prosecution.” Initial Order at 6. In particular, Doc’s says that Erico did not disclose the 1990 EIA/TIA standard that sets forth a spacing standard for open-top cable supports. However, the district court correctly found that Doc’s did not prove intent to defraud the PTO. Therefore inequitable conduct has not been shown to be a viable defense at this stage of the proceeding. Id. at 7.
With respect to the on-sale bar defense, Doc’s “presented no evidence, however, that anyone actually practiced Claim 17’s method by using a J-Hook more than one year prior to the filing date of the '994 Patent. On the record presented, therefore, § 102(b) likely does not apply.” Id. (emphasis in original). Once again, this court sustains the trial court’s sound reasoning, given the record at this stage of the proceeding.
Finally, Doc’s asserted “that Claim 17 is invalid under 35 U.S.C. § 103 because the combination of a prior art J-Hook with the methodology outlined in Claim 17 would have been ‘obvious,’ as defined in the statute, in light of everything that existed in the public domain before the patent’s filing date.” Id. Doc’s specifically asserted that the OBO Betterman reference in combination with the 1990 EIA/TIA (Electronics Industries Alliance/Telecommunications Industry Association) spacing standards renders Claim 17 obvious. According to the district court, “[t]he ‘conforming standards’ identified in the patent are the very spacing requirements set forth in the 1990 EIA/TIA standard.” Id. at 8. However, the district court found Doc’s obviousness defense likely to fail “because the [PTO] had sufficient information before it during its prior examinations to assess the very obviousness claim [Doc’s] now raises, and because secondary considerations of non-obviousness cut in [Erico’s] favor.” Id. at 8-9.
After finding Doc’s invalidity challenges did not raise a substantial question and *1355 construing the claim, the district court found Erico was likely to successfully prove that Doc’s engaged in contributory infringement because the J-Hooks sold by Doc’s were especially adapted for hanging communication cables as claimed, and because Doc’s failed to show that the J-Hooks had any substantial non-infringing use. Id. at 12. Based on Doc’s admitted copying and sale of J-Hooks, the district court found that Erico would suffer irreparable harm if an injunction did not issue and that the balance of hardships heavily weighed in Erico’s favor. Id. at 13-14. Therefore, the district court granted the preliminary injunction. Doc’s appeals. This court has jurisdiction under 28 U.S.C. § 1292(a)(1).
On appeal, Doc’s specifically contends that Claim 17 is invalid as obvious over the hook disclosed in the OBO Betterman pri- or art reference when combined with the EIA standard. The OBO Betterman prior art in the figure below shows a hook very similar to the J-Hook with downwardly flared flanges along the hook saddle.
[[Image here]]
In addition to the OBO Betterman reference, Doc’s cites to a specific section of the EIA standard as well as Mr. Laughlin’s testimony regarding cable installation practices. Doc’s contends the combination of the OBO Betterman reference coupled with the EIA standard and Mr. Laughlin’s testimony raise a substantial question as to the validity of Claim 17.
Furthermore, Doe s contends that the District Court misinterpreted the PTO’s consideration of the EIA standards proffered by Doc’s to invalidate the '994 patent. The District Court reasoned that the PTO had upheld the patent’s validity in light of the same prior art (i.e., the EIA standards) during the Reexamination No. 90/005,606 proceedings. However, in granting a second reexamination, the PTO stated that the “EIA/TIA Standard was not cited in Patent No. 5,740,994 or prior Reexamination No. 90/005,606; OBO was cited in the prior reexamination proceeding.” Reexamination Order, 90/007,891 (Mar. 2, 2006) (emphases added). Thus, the PTO cast doubt on the District Court’s finding that the “conforming standards” mentioned in the '994 patent are the same as the 1990 EIA/TIA standard and that the PTO had considered the 1990 standard during the first reexamination. In sum, Doc’s contends that the grant of the second reexamination request raises a substantial question as to the validity of claim 17.
Erico, on the other hand, asserts that the district court performed a proper obviousness analysis under KSR International Co. v. Teleflex, Inc., 550 U.S. -, 127 S.Ct. 1727, 1742, 167 L.Ed.2d 705. According to Erico, that analysis shows that Doc’s would most likely not prevail on its invalidity defense under 35 U.S.C. § 103. Erico contends that the district court had rejected Doc’s obviousness invalidity challenge based on the PTO’s reexamination in view of the OBO Betterman reference and the disclosure of “conforming standards” in the '994 patent itself. Furthermore, Erico argues that the district court is not bound by the findings of the PTO.
Ill
“Validity challenges during preliminary injunction proceedings can be *1356 successful, that is, they may raise substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial.” Amazon.com, Inc., 239 F.3d at 1358. In other words, a defendant need not prove actual invalidity. On the contrary, a defendant must put forth a substantial question of invalidity to show that the claims at issue are vulnerable. Thus, a showing of a substantial question of invalidity requires less proof than the clear and convincing standard to show actual invalidity. Id.
This court concludes that the OBO Betterman reference coupled with the EIA standards and Mr. Laughlin’s testimony mount a serious challenge to the validity of Claim 17 of the '994 patent. First, the OBO Betterman reference shows a hook fastener with downwardly flared flanges nearly identical to the Erico J-Hook. The downwardly flared flanges implicitly point to the reasonableness of sag in cables installed by using OBO Betterman fasteners. Second, the EIA standard states the appropriate spacing used between open-top cable supports. The OBO Betterman fasteners and the J-Hooks are similar to open-top cable supports in that cables are suspended between supporting members (i.e., J-Hooks, rungs of an open-top cable ladder). The applicable section of the EIA standard reads:
4.6.5 Cable Support
Where zone conduit or cable tray is not available in a suspended ceiling space and where telecommunications cables are allowed to be placed loosely in the ceiling, adequate open-top cable supports, located on 1222-1525-mm (48-60-in) centers, shall be provided.
It is reasonable to see that downwardly flared flanges coupled with the EIA spacing requirements could implicitly motivate a person of ordinary skill to use J-Hooks with the EIA spacing to achieve cable sag of no more than about 30 centimeters. See KSR Int’l Co., 127 S.Ct. at 1743; DyStar Textilfarben GmbH v. C.H. Patrick Co., 464 F.3d 1356, 1368 (Fed.Cir.2006) (“[Tjhere exist[s] an implicit, indeed common-sensical, motivation to combine the two references.”).
To further show common cable installation practices prior to the filing of the '994 patent application, Mr. Laughlin’s testimony shows an implicit motivation to combine the prior art. In part, Mr. Laughlin testified:
Q. I’m going to get to that in just a moment, okay. More than a year prior to the filing date of your patent, was it a common practice for installers of communication cables to pull the cable taut once they installed the cable between the supports if done in a workmanlike fashion?
A. Yes, if done in a workmanlike fashion.
Q. Were communication cables installed more than a year prior to your patent filing date in a workmanlike fashion?
A. There certainly were people installing them in a workmanlike fashion, and there were many people that were not.
Q. But there were at least some people that were installing them in a workmanlike fashion?
A. Yes, some.
Q. More than a year before your filing date?
A. Yes.
Q. And you knew that when you filed your patent application?
*1357 A. Yes.
Q. When those installers who did install in a workmanlike fashion more than a year prior to your filing date in open top cable supports and pulled taut, the sag would be less than 30 centimeters, correct?
A. Yes, if they were pulled taut.
Transcript of Proceedings at 92-93, Erico Int’l Corp. v. Doc’s Mktg. Corp., 1:05-cv-2924 (N.D.Ohio Mar. 9, 2006). Mr. Laugh-lin’s testimony shows the reasonableness of installing cables using open-top cable supports with EIA spacing standards resulting in less than 30 centimeters of sag. As such, the OBO Betterman reference coupled with the EIA standards and Mr. Laughlin’s testimony raise a substantial question of invalidity of Claim 17.
Even assuming the accuracy of the District Court’s secondary consideration analysis, it is reasonable to infer that one of ordinary skill would have considered the OBO Betterman hook coupled with the EIA standards and common knowledge within the art as shown by Mr. Laughlin’s testimony to explain that Claim 17 is vulnerable based on invalidity. See KSR Int’l Co., 127 S.Ct. at 1742; Amazon.com, Inc., 239 F.3d at 1358. Thus, Doc’s invalidity challenge based on obviousness cast enough doubt on the validity of Claim 17 to negate likelihood of success on the merits as to infringement of a valid patent. At this point, of course, Doc’s has only cast doubt on the validity of the '994 patent. The District Court will have the opportunity to reach a final validity determination at trial.
IV
Accordingly, this court vacates the district court’s grant of a preliminary injunction.

VACATED.

COSTS

Each party shall bear its own costs.